EBRITE *v.* BROOKHYSER.

4-9577                                          244 S. W. 2d 625

Opinion delivered October 22, 1951.

Rehearing denied November 26, 1951

*Ulys A. Lovell* and *Price Dickson,* for appellant.

*Rex W. Perkins* and *E. J. Ball,* for appellee.

HOLT, J.   George Brookhyser died intestate November 22, 1949, leaving as survivors, his widow, Susie, and his brothers and sisters, appellants here.  George had been twice married, his first wife having died May 25, 1949.  He married Susie August 25, 1949.  On November 4, 1949, George (then 70 years of age) attempted to convey real property ("The Gem Tourist Court" in Springdale) from himself to Susie and himself as tenants by the entirety.

At the time of his death, George also owned a 1941 Dodge automobile and certain household goods.  Susie traded the car for another, receiving credit for $295.  She sold the tourist court, residence and furnishings to appellees, Arthur and Elsie Boone, husband and wife, for $10,000.

The present suit was filed June 20, 1950, in which appellants alleged, in effect, "that the deed from George to himself and Susie, as tenants by the entirety or as an estate of survivorship was a nullity; that it was procured by fraud, coercion and undue influence; that the deed was not, in fact, acknowledged and that it should be stricken from the records; and that the title to the lands should be vested in appellants, subject only to the widow's homestead and dower and payment of the debts of the estate."

Appellees answered with a general denial, and Susie alleged that she owned the fee by virtue of the above deed of November 4, 1949, and pleaded estoppel. Elsie and Arthur Boone alleged that they were innocent purchasers for a valuable consideration.

The trial court found that the deed above from George to George and Susie "created an estate by the entirety subject to the rights of survivorship belonging to said estate, and that it was the intention of the deceased, George Brookhyser, to create an estate by the entirety with the survivor to take the fee.

"The Court finds further that on said date the deceased, George Brookhyser, delivered said deed to Susie W. Brookhyser and that she accepted said deed and remained in possession of said lands and real estate as aforesaid.

"The Court further finds that her husband, George Brookhyser, would have been estopped in his lifetime, he having died November 22, 1949, in Washington County, Arkansas, to question her rights as an owner of said estate by the entirety, and that the plaintiffs, and each of them, as his heirs are likewise so estopped to claim any right, title or interest in and to the above described real estate and lands."

The Court also found that Susie had converted personal property to her own use and its reasonable value was $975, for which amount decree was entered against Susie. This appeal followed.

The deed above contained the following recital: "That we, George Brookhyser and Susie W. Brookhyser, his wife, for and in the consideration of the sum of One Dollar and other Value Considerations, to us paid by George Brookhyser and Susie W. Brookhyser, Husband and Wife, do hereby grant, bargain and sell unto the said George Brookhyser and Susie W. Brookhyser, Husband and Wife, or the survivor in the Entirety, and unto their heirs and assigns, the following described land, situate in Washington County, State of Arkansas, to-wit: (describing it).

"TO HAVE AND TO HOLD the said lands and appurtenances thereunto belonging unto the said George Brookhyser and Susie W. Brookhyser, Husband and Wife, with right of survivorship and unto their heirs and assigns, forever. And we, the said George Brookhyser and Susie W. Brookhyser, hereby covenant that we are lawfully seized of said land and premises; that the same is unincumbered, and we will forever warrant and defend the title to the said lands against all legal claims whatever.

"And I, the said Susie W. Brookhyser, wife of George Brookhyser, in consideration of said sum of money, do hereby release and relinquish unto the said George Brookhyser and Susie W. Brookhyser, Husband and Wife, with the right of survivorship or the survivor in the entirety, all my interest, right, title and dower and convey my homestead in and to said lands.

"WITNESS hand and seal on this 4th day of Nov., 1949. (Signed) George Brookhyser (Seal) Survivor Susie (Seal)." The deed was recorded and there was evidence that it was delivered to Susie.

## 1.

We consider first appellants' contention that George lacked mental capacity to execute the deed. We cannot agree. There was evidence that while George was bedfast and was practically helpless physically, he was mentally alert, at the time he signed the deed. Before its execution, George made several requests for his friend,

L. E. Wiggins, a real estate dealer in Springdale, to come to his home and prepare the deed. When Wiggins came, George gave him an old deed from which to copy the description and other relevant information. Wiggins then returned to his office and prepared the deed. After a few days, Wiggins returned, George signed the deed and directed Wiggins to record it. A few days later, Wiggins recorded the deed and returned it to George who delivered it to Susie. Of some significance is the fact that George signed the deed "Survivor Susie" as indicating that he realized what he was doing, that he was perhaps near death, that Susie would probably survive him, and he wanted her to have this real estate.

While appellants offered testimony tending to contradict appellees, we cannot say, when all the evidence is considered, that the findings of the trial court were against the preponderance thereof.

On this issue of mental capacity, the governing rule has been many times announced by this court. In the comparatively recent case of *McKindley* v. *Humphrey*, 204 Ark. 333, 161 S. W. 2d 962, we said: "If the maker of a deed, will or other instrument has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument. Sufficient mental ability to exercise a reasonable judgment concerning these matters in protecting his own interests in dealing with another is all the law requires. If a person has such mental capacity, then, in the absence of fraud, duress, or undue influence, mental weakness whether produced by old age or through physical infirmities will not invalidate an instrument executed by him. (Citing cases.)"

2.

Next, appellants say that the acknowledgment on the deed is void and that the deed was of no effect and should be stricken from the deed records of Washington County. The answer to this contention is the well settled

rule that an unacknowledged deed is good between the parties. We said in *McSwain* v. *Criswell,* 213 Ark. 775, 213 S. W. 2d 383: ''An unacknowledged deed is good between the parties. *Jackson* v. *Allen,* 30 Ark. 110. Hence, the allegation and testimony as to the irregularity of the acknowledgment are not of importance except as they may shed light on the real issue in the case, which is: Did M. O. McSwain, being of sound mind, execute the deed and bill of sale?''

### 3.

Appellants argue with considerable force that the deed here in question from George to George and Susie did not create an estate by the entirety and was in fact a nullity. We think this contention also untenable.

Act 86 of 1935 (Ark. Stats., 1947, § 50-413) provides that a deed executed by a married man directly to his wife shall be construed as conveying ''the interest specified in the deed.'' The question is whether this statute permits a husband, already the owner of land, to create a tenancy by the entirety by a conveyance to himself and his wife.

In arguing that the statute does not permit this result the appellants rely principally upon *Stewart* v. *Tucker,* 208 Ark. 612, 188 S. W. 2d 125; *Weir* v. *Brigham,* 218 Ark. 354, 236 S. W. 2d 435, and *Pegg* v. *Pegg,* 165 Mich. 228, 130 N. W. 617, 33 L. R. A., N. S. 166, which was cited in both these Arkansas cases. It is insisted that the language in the Stewart and Weir cases compels us to hold that here the effort to create an estate by the entirety must fail. We cannot agree.

In all three of these cases the husband undertook to create a tenancy by the entirety by conveying to his wife an undivided one-half interest in land already owned by him. Such a conveyance is evidently at complete variance with the common law conception of an estate by the entirety, since at common law the theory was that each spouse owned the entire estate and not a mere moiety. Indeed, the Michigan court stressed this point in the Pegg

case, and we quoted its language with approval. Thus this factor alone is sufficient to support the conclusion reached in these three cases.

But, say the appellants, the earlier cases also emphasized the common law requirement of the four unities of interest, time, title, and possession. All the unities were patently not present in the three cases under review, since the wife's undivided half interest could in no way be said to have been acquired at the same time as the half interest retained by her husband. By analogy it is now argued that here the unity of time is also lacking, for the reason that the husband cannot convey to himself and so could have acquired no new title by virtue of his own deed.

We cannot agree with this reasoning. A complete answer is given in what is now the leading case of In re *Klatzl's Estate*, 216 N. Y. 83, 110 N. E. 181. There a majority of the judges, BARTLETT, COLLIN, HISCOCK, and CARDOZO, agreed that under modern married women's property acts a husband may create a tenancy by the entirety by a conveyance to himself and his wife. The same argument as to the unity of time was presented there as here, but Judge COLLIN answered: "The husband did not convey to himself, but to a legal unity or entity which was the consolidation of himself and another."

The modern view taken by the New York cases has spread rapidly to other jurisdictions. See annotations in 62 A.L.R. 518, and 137 A.L.R. 350. Among the many favorable comments from leading students in the field is this excerpt from Tiffany on Real Property, (3d Ed.), § 432: "The view that a tenancy by the entirety may be created by the direct conveyance of the husband and wife of property owned by one of them to themselves as tenants by the entirety appeals as being logical and just. An estate by the entirety is one recognized by law and upheld with all its incidents, and ordinarily a conveyance to husband and wife creates such an estate. It is the policy of the law to accord to each spouse absolute free-

dom in dealing with separately owned property, and this freedom entails no interruption of the unity arising from marriage. Nevertheless, as a property owner the spouse is a legal person apart and distinct from the legal entity composed of husband and wife. If it were otherwise, a husband and his wife could not take as tenants in common. To permit the creation of the estate carries out the intention expressed in the conveyance, while to construe it as conveying the property to one spouse as sole grantee, or to both as joint tenants or as tenants in common, would be a judicial conveyance of the property contrary to the owner's expressed intention.'' We are in complete agreement with this reasoning and see no reason why the parties should not be able to do directly that which they could undoubtedly do indirectly through the device of a straw man.

Affirmed.

Mr. Justice McFADDIN dissents.

ED. F. McFADDIN, Justice (Dissenting). My dissent goes to that portion of the majority opinion which holds that a husband, already owning the property, can create an entirety estate in such property by direct conveyance to himself and wife. In so holding, this Court has done violence to all of our previous cases on the subject; and these previous cases have become rules of property.

Those interested in the reasons for and incidents of estates by entirety may consult the following cases of this Court: *Robinson* v. *Eagle,* 29 Ark. 202; *Branch* v. *Polk,* 61 Ark. 388, 33 S. W. 424, 30 L. R. A. 324; *Roulston* v. *Hall,* 66 Ark. 305, 50 S. W. 690; *Robertson* v. *Robinson,* 87 Ark. 367, 112 S. W. 883; *Parrish* v. *Parrish,* 151 Ark. 161, 235 S. W. 792; *Dennis* v. *Dennis,* 152 Ark. 187, 238 S. W. 15; *Stewart* v. *Tucker,* 208 Ark. 612, 188 S. W. 2d 125; *Ryan* v. *Roop,* 214 Ark. 699, 217 S. W. 2d 916; *Weir* v. *Brigham,* 218 Ark. 354, 236 S. W. 2d 435. There are other cases which are collected in West's Arkansas Digest, ''Husband and Wife,'' § 14.

As essential to the creation of an estate by the entirety we have always held—until this present opinion—that "there must co-exist four unities, (1) unity of interest. (2) unity of title. (3) unity of time and (4) unity of possession." In *Stewart* v. *Tucker,* 208 Ark. 612, 188 S. W. 2d 125, we listed these unities and quoted further from 33 C. J. 907: " 'That is, each of the owners must have one and the same interest conveyed by the same act or instrument, to vest at one and the same time . . . and each must have the entire possession of every parcel of the property held in joint tenancy as well as of the whole.' "

We have repeatedly held that the four unities—interest, title, time and possession—must be present before an estate by entirety could be created. Thus in *McGraw* v. *Berry,* 152 Ark. 452, 238 S. W. 618, we held that where a co-tenant owned an interest in the land and had all the other co-tenants convey the land to him and his wife, such conveyance by the other co-tenants did not create an estate by the entirety because there were not present the four unities essential to create such an estate.

Again in *Stewart* v. *Tucker,* 208 Ark. 616, 188 S. W. 2d 125, we held that an estate by entirety did not result from an agreement between a wife and her husband to the effect that the husband would continue to make payments on a contract made with his wife, and that the survivor as between the husband and wife would get the fee.

Finally, in the recent case of *Wier* v. *Brigham,* 218 Ark. 354, 236 S. W. 2d 435, we held that the execution by husband and wife of a deed to themselves of land owned by the husband could not create an estate by entirety since the four essential unities, of interest, time, title and possession, were not present. Thus in a series of cases, we have held that an estate by entirety could not be created except when the title came to husband and wife by deed from a third person. Now—in the present case the majority is holding that the estate may be created by the husband—already the owner—conveying

to himself and his wife. Such holding overrules our previous cases.

In an attempt to avoid or explain away these previous cases, the majority opinion offers two arguments: first, the majority says that Act 86 of 1935 (now § 50-413 Ark. Stats.) allows the husband to convey directly to the wife, and that such act is applicable here. Act 86 of 1935 reads:

"Any deed of conveyance of real property located in this State, executed after the passage of this act, by a married man directly to his wife or by a married woman directly to her husband, shall be construed as conveying to the grantee named in such deed the entire interest of the grantor in the property conveyed, or the interest specified in the deed, as fully and to all intents and purposes as if the marital relation did not exist between the parties to such deed."

This Act, in allowing a husband to convey directly to his wife, does not change the *essentials* for the creation of an estate by the entirety, which essentials are the four unities. These do not exist when the conveyance is made direct from the husband, as owner, to himself and wife.

The same argument now used by the majority was stated and answered in the case of *Wier* v. *Brigham*, 218 Ark. 354, 236 S. W. 2d 435, wherein this Court, without recorded dissent, said:

"In the briefs attention is called to Act 86 of 1935, now found in Sec. 50-413, Ark. Stats., which allows spouses to convey directly to each other. From that Statute, appellant urges that an estate by entirety can be created by such a conveyance as is involved in this case. We reject that contention. An estate by the entirety partakes of the nature of a joint tenancy to the extent of requiring the concurrence of the four unities of interest, time, title and possession, as previously mentioned; and these unities did not concur in the deed here in question. The interest of a husband in the estate by entirety can be conveyed to his wife by virtue of the said Act 86 of 1935; such was our holding in *Ryan* v. *Roop*, 214 Ark.

699, 217 S. W. 2d 916. But an estate by the entirety can come into existence only when the required essentials are observed, just as is pointed out by Mr. Justice ROBINS in *Stewart* v. *Tucker, supra.* Those essentials did not exist in *Stewart* v. *Tucker* and do not exist in the case at bar.''

Therefore, the argument of the majority based on Act 86 of 1935 was answered in *Wier* v. *Brigham.*

Secondly, the majority after trying to distinguish the case at bar from *Stewart* v. *Tucker, supra,* and *Wier* v. *Brigham, supra,* finally admits that this Court wants to take ''the modern view.'' Here is the language of the opinion:

''The modern view taken by the New York cases has spread rapidly to other jurisdictions. (See Ann. 62 A. L. R. 518 and 137 A. L. R. 350.) Among the many favorable comments from leading students in the field is this excerpt from Tiffany on Real Property . . .''

Now this taking of ''the modern view'' fills me with great apprehension: for this Court is deliberately leaving our old holdings—*McGraw* v. *Berry, Stewart* v. *Tucker* and *Wier* v. *Brigham*—for ''the modern view'' taken by the New York cases. Our holdings—on the necessity of the existence of the four essentials to create an estate by the entirety—have become a rule of property in this state; and lawyers and laymen have conducted their dealings on the justified expectation that this rule of property would not be changed retrospectively. 54 C. J. 1110 defines a rule of property:

''A settled legal principle governing the ownership and devolution of property; the decisions of the highest court of a state when they relate to and settle some principle of local law directly applicable to title. In the plural, those rules governing the descent, transfer, or sale of property, and the rules which affect the title and possession thereto.''

If the public should become dissatisfied with our rules of property and should want to adopt ''the modern view'', then the legislature can pass an Act stating that

from the effective date of such act, a conveyance direct from the husband to the husband and wife shall create an estate by entirety. Should the legislature enact such a law it would operate prospectively only. But when the Court overrules its previous holdings on property rights and adopts a "modern view", the effect is to change the law retrospectively. The effect of the new holding is to say that all the previous holdings were not the law, but mere heresies.

A classic example of the terrific injustices which can be done real estate titles by this Court changing rules of property is mirrored in *Carter Oil Co.* v. *Weil,* 209 Ark. 653, 192 S. W. 2d 215. Briefly that case involved this situation: for many years this Court held as reflected in *Cole* v. *Collie,* 131 Ark. 103, 198 S. W. 710, that if a reservation appeared in the *habendum* clause of the deed and was in conflict with the granting clause, then such reservation was void. But in *Beasley* v. *Shinn,* 201 Ark. 31, 144 S. W. 2d 710, 131 A. L. R. 1234, the Court overruled *Cole* v. *Collie* and the older cases and gave effect to a reservation which appeared only in the *habendum* clause of the deed even though in conflict with the granting clause. In other words, in *Beasley* v. *Shinn* the Court overruled the rule of property that had existed in *Cole* v. *Collie.*

Before the decision in *Beasley* v. *Shinn,* one of the most thorough title lawyers of this State examined an abstract in which was a deed that had a reservation only in the *habendum* clause; and the lawyer, in reliance on the opinion of this Court, wrote on the page of the abstract: "Under the authority of *Cole* v. *Collie,* 131 Ark. 103, 198 S. W. 710, our opinion is that the reservation is void." But in *Carter Oil Company* v. *Weil,* 209 Ark. 653, 192 S. W. 2d 215, we held that when in *Beasley* v. *Shinn* we overruled *Cole* v. *Collie,* then the old holdings became a mere heresy and we quoted from Blackstone's Commentaries:

"For if it be found ·that the former decision is manifestly absurd or unjust, it is declared, not that such a sentence was *bad* law, but that it *was not law*: that is,

that it is not the established custom of the realm, as has been previously determined."

Thus the opinion of a lawyer who had relied on our own cases became wrong through no fault of his. Such a situation is not one of which any court should boast. Yet the majority is doing the same thing in the case at bar. In *Wier* v. *Brigham*, 218 Ark. 354, 236 S. W. 2d 435, we said:

"In the briefs attention is called to Act 86 of 1935, now found in § 50-413, Ark. Stats., which allows spouses to convey directly to each other. From that Statute, appellant urges that an estate by entirety can be created by such a conveyance as is involved in this case. We reject that contention. An estate by the entirety partakes of the nature of a joint tenancy to the extent of requiring the concurrence of the four unities of interest, time, title and possession, as previously mentioned; and these unities did not concur in the deed here in question. The interest of a husband in the estate by entirety can be conveyed to his wife by virtue of the said Act 86 of 1935; such was our holding in *Ryan* v. *Roop*, 214 Ark. 699, 217 S. W. 2d 916. But an estate by the entirety can come into existence only when the required essentials are observed, just as is pointed out by Mr. Justice ROBINS in *Stewart* v. *Tucker, supra.* Those essentials did not exist in *Stewart* v. *Tucker* and do not exist in the case at bar."

Now less than one year later, the majority in the case at bar is in effect overruling *Wier* v. *Brigham, Stewart* v. *Tucker* and all the previous cases on the point, and is adopting "the modern view". In the case of *Smith* v. *Allwright*, 321 U. S. 649, 88 L. Ed. 987, 64 S. Ct. 757, Mr. Justice ROBERTS in dissenting from a holding which overruled previous cases used this language, which is worthy of repetition:

"The reason for my concern is that the instant decision, overruling that announced about nine years ago, tends to bring adjudications of this tribunal into the same class as a restricted railroad ticket, good for this

day and train only. I have no assurance, in view of current decisions, that the opinion announced today may not be shortly repudiated and overruled by justices who deem they have new light on the subject. . . .

"It is regrettable that in an era marked by doubt and confusion, an era whose greatest need is steadfastness of thought and purpose, this court, which has been looked to as exhibiting consistency in adjudication, and a steadiness which would hold the balance even in the face of temporary ebbs and flows of opinion, should now itself become the breeder of fresh doubt and confusion in the public mind as to the stability of our institutions."

If we make a habit of changing our rules of property with retrospective effect, then the quoted language may some day be applied to this Court. Heaven forbid! I feel so seriously on this matter of overruling cases involving rules of property that I register this dissent.