ODOM *v.* ODOM.

5-2149                                335 S. W. 2d 301

Opinion delivered May 16, 1960.

*Gentry, Gentry & Mott,* for appellant.

*George F. Hartje Jr.* and *Opie Rogers,* for appellee.

GEORGE ROSE SMITH, J.   The appellee's husband, Walter Odom, owned eighty acres of land at the time of his death, intestate and without issue, in 1957.   Odom was survived by his widow and by four brothers, six sisters, and the five children of a deceased sister.   The widow, who received a half interest in the land as her dower, at first attempted to obtain deeds from her husband's heirs to the other one half interest.   Most of the heirs signed such a conveyance, but there is a question whether those deeds were ever delivered to the grantee.

This proceeding was originally a partition suit filed by the appellee against those of her husband's heirs who refused to sign a deed to her.   By an amendment to her complaint the appellee asserted as an alternative ground for relief that in about 1955 her husband had conveyed the land to himself and the appellee as tenants by the entirety, that the deed had been destroyed

under the mistaken belief that it was of no validity, and that the title to the land should be quieted in the appellee as the surviving tenant by the entirety. The original defendants, joined by other heirs who intervened in the case, filed a motion to strike the alternative prayer for relief on the ground that the widow had elected her remedy by initially basing her complaint upon the conveyances assertedly signed by part of her husband's heirs. The chancellor denied this motion and eventually upheld the appellee's title under her claim to be the surviving tenant by the entirety.

The chancellor was right in refusing to strike the alternative count in the amended complaint, for the case does not fall within the doctrine of election of remedies. In the typical situation involving that doctrine a single transaction presents the plaintiff with a choice of inconsistent remedies. For example, in the leading case of *Belding* v. *Whittington*, 154 Ark. 561, 243 S. W. 808, 26 A. L. R. 107, cited by the appellants, the vendors in a contract for the sale of land had refused to execute a deed to the property. This breach of contract afforded the vendees a choice between suing at law for damages or suing in equity for specific performance. We held that the purchasers had elected their remedy by filing an action at law for breach of contract, which precluded them from dismissing that case and bringing a suit in equity for specific performance.

In the case at bar the widow's choice is not between two remedies stemming from the same transaction; it is between two entirely separate causes of action. In substance her amended complaint says that she is entitled to have her title quieted pursuant to the unrecorded destroyed deed that created a tenancy by the entirety during her husband's lifetime. If, however, she is unable to prove that cause of action then she seeks alternative relief pursuant to the deeds executed after her husband's death.

We see no real distinction between this case and our holding in *Allen* v. *First Nat. Bank of Batesville*, 231 Ark. 201, 321 S. W. 2d 750. There the plaintiffs, as the

heirs of C. M. Edwards, sought to recover property upon either of two alternative inconsistent theories: (*a*) Edwards was incompetent to make a will, or (*b*) if he should be found to have been competent then the other claimants to the property had chosen to accept only a small portion of the estate. The trial court required the plaintiffs to elect between these contradictory theories, but we held the alternative prayers to be permissible, saying:

"The court placed too great a burden on the plaintiffs. It was impossible, or at least exceedingly difficult, for the plaintiffs to know at that time whether C. M. Edwards was competent or incompetent to make the wills in question. In fact they would never know for a certainty until the issue was decided in court. The two causes of action were pleaded, we think, alternatively as shown by the complaint and the prayer . . .

"In reaching the conclusion that appellants (the plaintiffs) should not have been required to elect, we are not overlooking the authorities presented by the appellees, and we recognize that the dividing line between when an election should be required and when it should not be required is not always clear and distinct, as is the case here. However, we feel that in equity matters any doubt should be resolved in favor of the pleader to the end that there may be a decision on the merits rather than on the pleadings and thereby avoid a possible miscarriage of justice."

In the case at hand the appellee was faced with the necessity of proving by clear and convincing evidence that her husband had executed a deed creating a tenancy by the entirety. She, like the plaintiffs in the *Allen* case, could not foretell with certainty that she would be able to sustain her burden of proof. We perceive no injustice to the appellants in a rule that permits an alternative precautionary pleading, so that both possible causes of action may ultimately be decided upon the merits.

As a second ground for reversal the appellants insist that the existence of the missing deed was not estab-

lished by the required quantum of proof. This question is not free from doubt, but after studying the record we are unable to say that the chancellor was in error in finding the plaintiff's proof to be sufficiently clear and convincing.

The appellee testified that her husband, in order to assure her the ownership of the property in case of his death, executed a deed to himself and her. (This would create a tenancy by the entirety. *Ebrite* v. *Brookhyser*, 219 Ark. 676, 244 S. W. 2d 625, 44 A. L. R. 2d 587.) She describes the deed as being just like the one they already had except that her name was added. She kept the deed until her husband took it to the county seat with the intention of recording it, but upon his return he told her that he had not recorded the instrument, as someone in the courthouse had informed him that the conveyance was not needed for his wife's protection. The unrecorded deed was burned up with some trash.

There is no sound reason to doubt the veracity of the appellee's testimony. She and her husband had been married for about thirty-five years; it was quite natural for him to safeguard her interest in the property. The fact that the deed was executed is confirmed by the testimony of the notary who prepared it, an apparently disinterested witness. There is no testimony whatever to the contrary. In view of all the circumstances we are of the opinion that the appellee sustained her burden of proof.

Affirmed.